UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| ELIZABETH COBLE,<br>MILAGROS HARPER, and<br>DENNIS HARPER,<br>on behalf of themselves and<br>all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>COHEN & SLAMOWITZ, LLP,<br>DAVID COHEN, ESQ.,<br>MITCHELL SLAMOWITZ, ESQ.,<br>LEANDRE JOHN, ESQ., and<br>CRYSTAL S.A. SCOTT, ESQ.,<br><br>     Defendants. | 11-cv-1037 (ER)(GAY)<br><br><br><br><br><br><br>**HON. EDGARDO RAMOS**<br><br>**HON. GEORGE A. YANTHIS** |

_____

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
# OF PLAINTIFFS' MOTION TO AMEND COMPLAINT

Dated: March 1, 2013
   New York, New York

                Schlanger & Schlanger, LLP
                Daniel A. Schlanger, Esq.
                Peter T. Lane, Esq.
                9 East 40th Street, Suite 1300
                New York, New York 10016
                Ph: 914-946-1981
                daniel.schlanger@schlangerlegal.com
                peter.lane@schlangerlegal.com

                Gary Klein, Esq.
                (admitted *pro hac vice*)
                Klein Kavanagh Costello LLP
                85 Merrimac Street, 4th Floor
                Boston, MA 02114
                Ph: 617-357-5031
                klein@kkcllp.com

Plaintiffs, by and through their attorneys, Schlanger & Schlanger, LLP, respectfully submit this reply memorandum of law in further support of their motion to amend the complaint. Specifically, Plaintiffs submit this memorandum to highlight:

1) Defendants' erroneous suggestion that anything about the proposed actual-damages-subclass requires this court to review state-court judgments in violation of *Rooker-Feldman* doctrine;

2) The erroneous unsupported assertion that monies seized through the abuse of the judgment enforcement process are not compensable as actual damages under the FDCPA; and

3) That the proposed amendments are timely and appropriate, and do not prejudice Defendants in any way.

For the reasons stated in Plaintiff's moving papers and this reply, the motion to amend should be granted in its entirety.

I. **LEGAL ARGUMENT**

    A. **Actual Damages Sought in the Amended Complaint Are Not Barred by the *Rooker-Feldman* Doctrine**

Defendants contend that Plaintiffs' proposed amendment for an actual-damages-subclass is barred by *Rooker-Feldman* doctrine. In doing so, Defendants repeatedly mischaracterize the actual damages as injuries caused by the state-court judgments. Defendants' Memorandum in Opposition (MOL) at 6-9.

Defendants' misrepresent Plaintiffs' allegations and the relief sought, and misconstrue the scope of *Rooker-Feldman*. Plaintiff does not seek to overturn or reject any judgment against any class member, nor does Plaintiff seek to prevent collection upon those judgments. Rather, Plaintiff seeks to make Defendants liable for the unlawful manner in which they attempted to collect the judgments. Specifically, Defendants violated the FDCPA:

> by continuing to collect the debts at issue after November 2006, without informing or attempting to inform consumers that the Midlantic Affidavits and related attorney affirmations were false, and/or that Defendants no longer had a reasonable, good faith belief in their accuracy, propriety and truthfulness.

SAC at ¶ 120.[1]

Indeed, this Court has already held that these allegations, if proven, violate the statute:

> Plaintiffs first argue defendants actively and knowingly concealed the fact that the Midlantic affidavits and attorney affirmations referencing them were false and improper. In those instances where a consumer raised lack of service as a defense, defendants affirmatively re-asserted the validity of the Midlantic affidavits they knew to be false.
> Moreover, defendants are still attempting to collect on the default judgments. Continued collection potentially legitimizes those judgments and conceals the fact that C&S can no longer maintain a good faith belief in their validity. . .
> . . . Plaintiffs have sufficiently alleged that defendants were on notice that any default judgments based on the Midlantic affidavits were potentially fraudulent as of 2006. <u>They have also plausibly alleged that by failing to investigate the fraudulent practices of its process service company and continuing to enforce those judgments, defendants violated the FDCPA and concealed that violation in the process</u>.

<u>Coble v. Cohen & Slamowitz, LLP</u>, 824 F. Supp. 2d 568, 571-572 (S.D.N.Y. 2011)

The actual damages subclasses thus merely seeks to force Defendants to return monies collected by means of particular misconduct that the Court has already found would, if proven, violate the FDCPA. If Defendant were to show that it collected upon any of these judgments without engaging in this misconduct, there would be no liability and no actual damages stemming from it. Moreover, the Complaint does not seek to prevent Defendants from collecting on the judgments going forward, so long as they do so without making any misrepresentations, by act or omission, regarding the veracity and reliability of the Vega and Smith Affidavits of Service. See SAC Wherefore Clause, D.

In response, Defendants rely on selective citation of the unpublished Western District of Michigan decision, <u>Stolicker v. Muller, Richmond, Harms, Myers and Sgroi, PC</u>, 2006 U.S. Dist. LEXIS 85329 (W.D.Mich. 2006), for the broad proposition that actual damages defined in terms of state court judgments create Rooker-Feldman problems. But, consistent with this Circuit's precedent, <u>Stolicker's</u> holding actually regards the *precise source* of damages and does not broadly prohibit actual damages having *any* relationship to a state court judgment. Specifically the holding indicates that "[i]f…the Court defined actual damages in

---

[1] Regarding the Plaintiff's focus on Defendants' conduct after it learned of the problems with its Midlantic affidavits of service, see also, e.g., SAC at ¶¶ 2-5:

terms of the *attorney fees awarded* by the state court judgments, then the source of the injury would be the state court decisions." Id. at *19 (*emphasis added*).  Stolicker is thus quite specific to the facts and damages described in that matter:  A state court had entered a judgment and part of the judgment awarded attorneys fees; and measuring actual damages by the amount of attorney fees awarded by the state court would require the federal court to review and overturn the state court award.

Stolicker explicitly indicates, however, that in the face of a state-court judgment "[i]f there is some other source of injury, *such as a third party's actions*, then the plaintiff asserts an independent claim." Id. (quoting McCormick v. Braverman, 451 F.3d 382, 393 (6th Cir. 2006)(*emphasis added*).  This is consistent with the U.S. Supreme Court holding in Exxon-Mobile v. Saudi Basic Indus. Corp., which only applies *Rooker-Feldman* to a state-court loser's "claim that the *state judgment itself* violates the loser's federal rights." 544 U.S. 280, 287 (2005)(*emphasis added*).

Here, the Federal claim is based precisely on "a third party's actions", in form of C&S's acts and omissions in the course of collecting upon the judgments.  Thus, consistent with this Circuit's focus "on the causal relationship between the state-court judgment and the injury of which the party complains in federal court," (McKithen v. Brown, 481 F.3d 89, 96 (2d Cir. 2007), Plaintiffs' actual damages were not caused by the state court judgments themselves.  Instead they were caused by Defendants' unfair and deceptive collection actions when it misled consumers with regard to the veracity of the affidavits after Vega and Smith came forward and disclosed to Defendants that the affidavits were materially false.

Not surprisingly, Defendants ignore the extensive case law cited in Plaintiffs' Memorandum in Support of the Motion to Amend regarding the exercise of federal jurisdiction over FDCPA claims related to enforcement of state-court judgments. For example, Mascoll v. Strumpf, 2006 U.S. Dist. LEXIS 69061, determined that FDCPA claims for actual damages related to unfair and deceptive efforts to collect monies owed under a judgment are not barred by *Rooker-Feldamn*.  There, the defendants were alleged to have "misused judicial process by wrongly persisting in efforts to collect on a debt which they knew or, in the exercise of due diligence, should have known that [the creditor] had no right to collect." Id. at *8.  The

Court determined that "[a]lthough this claim may deny a legal conclusion of the Nassau County Court -- namely, that Defendants are legally entitled to recover on the BOA debt -- it nonetheless raises an independent claim." Id. (*emphasis added*). Thus, even though a state-court may affirm the legal legitimacy of a debt, once a debt-collection law firm has reason to know of defects in the judgment their continued steps to collect on that judgment run afoul of the FDCPA.

Likewise, in Todd v. Weltman, Weinberg & Reis. Co., 348 F. Supp.2d 903 (S.D.Ohio 2004)(aff'd by Todd v. Weltman, 2006 U.S. App. LEXIS 808 (6th Cir. 2006), FDCPA class claims for unfair and deceptive acts taken in enforcement of properly entered judgments were not barred by *Rooker-Feldman*. The plaintiffs in Todd alleged that debt-collection attorneys submitted affidavits in judgment-enforcement proceedings that falsely stated that the attorneys had reason to believe that the class members had non-exempt assets in their bank accounts, when there was no good-faith basis for such a belief. Even though the Ohio Municipal Courts may have found such affidavits satisfactory under Ohio law, the class claims related to false and deceptive actions to enforce judgments did not create any *Rooker-Feldman* problems. Id at 910. Moreover, in Resler v. Messerli & Kramer, PA, 2003 U.S. Dist. LEXIS 1741 (D.Minn. Jan. 23, 2003) FDCPA claims regarding efforts to enforce a judgment entered on an undisputed debt through the service of a deficient notice of levy were not barred by *Rooker-Feldman*.

Thus, Defendants' suggestion that claims for actual damages related to monies collected on properly entered judgments necessarily create *Rooker-Feldman* problems, ignores the precedents of this and other circuits regarding false and deceptive enforcement actions.

Plaintiffs' claims for actual damages are based on particular deceptive conduct taken by Defendants during the course of their collection on state court judgments. Plaintiffs do not seek to challenge, vacate, or prevent enforcement of any state court judgment. As such, the Rooker-Feldman doctrine is not applicable.

### B. Money Taken From Sub-Class Members By Means Of Defendants' False And Deceptive Actions Is Compensable As Actual Damages Under The FDCPA

Defendants contend that a claim for actual damages related to monies collected through the enforcement of a state-court judgment are outside the scope of actual damages awarded under the FDCPA. Again, Defendants are wrong and rely entirely on the unsupported argument that "payment" of "legitimately owed debt" cannot be considered "out of pocket expenses" under the FDCPA. Defendants' MOL at 10.

Defendants' conflate the legitimacy of a debt with issues of the legitimacy of the process by which the debts are collected. However, it is axiomatic that "[a] major purpose of the FDCPA is to protect individuals from unfair debt collection practices regardless of whether the individual actually owes a debt." Sparrow v. Mazda Am. Credit, 385 F. Supp. 2d 1063, 1071 (E.D. Cal. 2005) citing Baker v. G.C. Services Corp., 677 F.2d 775, 777 (9th Cir. 1982); Jobe v. Alliance Collection Serv., 2012 U.S. Dist. LEXIS 128742 (N.D. Miss. Sept. 11, 2012). Furthermore, the FDCPA § 1692K(a)(1), unambiguously provides for compensation of "any actual damages sustained…as a result" of a debt collector's failure to comply with any provision of the FDCPA.

Even within the New York state-court post-judgment collection process, the legitimacy of an underlying judgment is wholly separate from the validity of the enforcement action. For example, a bank restraint placed on funds recognized as exempt from enforcement, will be vacated even when the entry of judgment was proper and the debt is legitimately owed. See International Airline Emples. Fed. Credit Union v. Jonas, 2002 N.Y. Misc. LEXIS 534 (1st Dept. May 10, 2002); Matter of Balanoff v. Niosi, 16 A.D.3d 53 (2d Dept. 2004). The decisions in Todd and Ressler, cited above, reinforce this in the context of FDCPA violations and make clear that false and deceptive actions taken in the enforcement of judgments are no less violative of the FDCPA simply because the debts may have been legitimately owed.

As it has already been determined in this case that continuing judgment enforcement actions after Defendants could no longer maintain a good faith belief in the veracity of the affidavits of service without notifying consumers of same would violate the FDCPA (Coble v. Cohen & Slamowitz, LLP, 824 F. Supp. 2d 568, 571-572 (SDNY 2011), it follows that any monies taken from the class members through such false and deceptive acts are recoverable as actual damages.

Put differently, after learning that Smith and Vega had recanted on material aspects of their affidavits of service, such that the veracity of these affidavits could no longer reasonably be asserted, Defendants collected money from the sub-class members by concealing the wrongdoing, and representing to consumers and the courts that the affidavits were truthful.  Plaintiffs whose money was seized by means of these misrepresentations have suffered compensable actual damages under § 1692k.[2]

Furthermore, despite Defendants' assertions to the contrary, the FDCPA does not bar Plaintiffs' claims for actual damages under an alternate state-law cause of action for unjust enrichment.  See SAC ¶¶ 129-136.  In New York "the basic elements of an unjust enrichment claim…require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004)(Citing Clark v. Daby, 300 A.D. 2d 732 (NY 2002)).  These elements have all been met.

Moreover, the FDCPA does not preempt any state-law claim, "except to the extent that those laws are inconsistent with any provision" of the act.  15 USC § 1692(e); Colo. Capital v. Owens, 227 F.R.D. 181, 191 (E.D.N.Y. 2005).  Here, nothing about Plaintiffs claim for unjust enrichment are inconsistent with any provisions of the FDCPA.

Defendants, however, relying on a district court decision from Georgia, suggest that recovery for "unjust enrichment" is not available as a component of actual damages under the FDCPA.  Def.' MOL at 11, citing Schimmel v. Slaughter, 975 F. Supp. 1481, 1483 (M.D. GA. 1997).  Defendant's argument and Schimmel's holding have absolutely no bearing on the case at bar.  Plaintiffs' claims for actual damages for unjust enrichment are unambiguously asserted in the SAC as an alternate state-law cause of action and not as a "component" of actual damages under the FDCPA, whatever that may mean.[3]

### C. The Proposed Amendment Does Not Prejudice Defendants

---

[2] It should be noted in this regard that Defendants' characterization of the monies involved as "payments" is misleading.  The class definition is limited to monies seized by Defendants by means of wage garnishment and bank restraint.  Voluntary payments by consumers are not at issue.

[3] Plaintiffs' counsel is unaware of any other state or federal court decision citing to Schimmel for any reason.

Relying on <u>Block v. First Blood Assoc</u>., 988 F.2d 344, 350 (2d Cir. 1993), Defendants also argue that Plaintiffs' motion should be denied because it would require costly additional discovery. Defendants' argument is both mistaken on the law and unsupported by the record.

Following Federal Rule of Civil Procedure 15, <u>Block</u> reaffirms that "[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." <u>Id</u>.  While a court should consider whether an amendment requires the nonmovant "to expend significant additional resources to conduct discovery" (<u>Id</u>.), the Second Circuit has clarified that "the fact that one party has spent time and money preparing for trial will usually not be deemed prejudice sufficient to warrant a deviation from the rule broadly allowing amendment to pleadings." <u>Monahan v.  New York City Dept. of Corrections</u>, 214 F. 3d 275, 284 (2d. Cir 2000)(citing <u>Block</u> at 351).  Thus, an amendment would be prohibited only "where [it] unfairly surprises the non-movant and impedes the fair prosecution of the claim." <u>Id</u>.

Here, Defendants have made no showing that they have even *begun* preparing for trial or that they were unfairly surprised, but rather complain that the effort in obtaining information based on data that already exists in their computer systems is burdensome. This simply does not amount to the kind of "substantial prejudice" required to deviate from Rule 15's general command that leave to amend "shall be freely given when justice so requires." *See* <u>Block</u> at 351.

Moreover, Defendants' claims about the burden of acquiring the necessary information regarding the proposed subclasses are disproven by Defendants' deposition testimony and document production.  For example, in his affidavit attached to Defendants' opposition, Leandre John asserts that "computer records before October 30, 2006 did not indicate the particular manner of service (i.e. nail and mail or some other form of substituted service)." Defendants' MOL at 13, (referring to John Affidavit attached as Exhibit 1(John Affidavit)). This is demonstrably false: Mr. John testified at deposition that a document printed from Defendant's computer records dated July 28, 2005 contained a data-field indicating nail-and-mail service,

which is labeled "N/ML." See Exhibit A to Attached Declaration of Peter Lane, (containing relevant portions of the 12/14/12 Deposition of Leandre John).

In addition, Mr. John asserts in his affidavit that Cohen & Slamowitz that "there are numerous files for which the affidavits of service have not been scanned electronically", and that in order to search the contents of the PDF documents they do maintain, they would have to open each document and manually review it. John Aff. at ¶ 5.

Mr. John's statement is demonstrably false. In accordance with the confidentially order of the Court, Defendants have already turned over well over 5000 thousand post-judgment files, a random sampling of which reveals that virtually all contain a pdf of the affidavit of service.[4]

Moreover, any PDF document may be easily prepared for optical character recognition (OCR) which readily allows the reader to scan the image for printed text. Plaint. MOL at p. 19, citing <u>Race Tires America, Inc. v. Hoosier Racing Tire Corp.</u>, 674 F.3d 158, 161-2, n. 6 (3rd Cir. 2012). Thus, identifying Smith and Vega affidavits in any given file, will not pose any great burden, particularly for a collection firm that has 12 full time IT staff. *See* Plaint.' MOL at p. 19, FN 9 (citing John Depo at p. 20).

In short, producing reports based on electronically stored information that Defendants already maintain hardly requires them "to expend significant additional resources to conduct discovery." <u>Block</u>, 988 F.2d at 350. Thus, nothing about Mr. John's new assertions, which directly contradict much of his previous deposition testimony, amounts to prejudice that would warrant the denial of a motion to amend.

**D. There is No Delay in Seeking the Amendment, as the Proposed Subclasses Refine the Actual Damages Demanded in the First Amended Complaint**

Despite Defendants suggestion to the contrary, Plaintiffs amendments are not "unduly delayed." Def. MOL at p. 11. In the First Amended Complaint, filed as of right on December 19, 2011, ECF Document #

---

[4] Specifically, counsel for Plaintiffs reviewed 100 of the files previously produced (selected at random across a wide date range), of which all but three contained affidavits of service in PDF form. And with regard to the rare file that does not contain an affidavit of service, there is no great burden in Defendants' retrieving the hard copy from its files.

21, Plaintiffs sought actual damages resulting from Defendants' violations of the FDCPA.  *See* ECF #21 at ¶ 103.  Thus, the proposed subclasses narrow the class of consumers seeking actual damages relief, as compared to the First Amended Complaint, filed as of right, in December 2011.

Specifically, based on information gathered during the deposition of former process server Alfred Smith, as well as additional information regarding Vega garnered during his deposition (see, e.g. Plaint. MOL at pp. 4, 11 citing Vega Deposition Transcript attached thereto as Exhibit B.), the SAC refines the demand for actual damages to limit it to two subclasses each involving a particular Midlantic process server.  An amendment which refines a previous demand to narrower subclasses can hardly be faulted for undue delay, bad faith, dilatory motive, or prejudice to Defendants.  *See*  Mathon v. Marine Midland Bank, N.A. 875 F. Supp 986, 1002 (E.D.N.Y. 1995).

Defendants' attempt to fault Plaintiffs on this basis is particularly without merit in light of the District Court having already granted Plaintiff's request to amend with regard to the additional factual allegations uncovered during discovery.  ECF Docket, 12/5/12 Minute Entry; Plaint. MOL at 4-5.

## II.   CONCLUSION

For the foregoing reasons, it is respectfully requested that Plaintiffs' Motion to Amend the Complaint be granted in its entirety.

DATED:   New York, New York
         March 1, 2013

                              Respectfully Submitted,


                                /s/  Daniel A. Schlanger
                              Daniel A. Schlanger, Esq.
                              Peter T. Lane, Esq.
                              Schlanger & Schlanger, LLP
                              9 East 40th Street, Suite 1300
                              New York, New York 10016
                              Tel:  914-946-1981
                              Fax:  914-946-2930
                              daniel.schlanger@schlangerlegal.com