## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Elizabeth Coble, Milagros Harper, and Dennis Harper, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>   v.<br><br>Cohen & Slamowitz, LLP, David Cohen, Esq., Mitchell Slamowitz, Esq., Leandre John, Esq., and Crystal S.A. Scott, Esq.,<br><br>       Defendants. | Index: 11-cv-01037<br><br><br><br>Hon. Edgardo Ramos<br><br>Hon. George A. Yanthis |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

# TABLE OF CONTENTS

Table of Authorities ....................................................................................... ii

I.   INTRODUCTION ............................................................................. 1

II.  NATURE OF THE CASE ...................................................................2
A.   The Facts and Law Underlying the Action ................................................. 2
B.   The Procedural History of the Litigation ................................................... 3
C.   The Parties' Settlement Negotiations ...................................................... 5

III. KEY SETTLEMENT TERMS AND PROVISIONS FOR CLASS NOTICE ............7
A.   The Settlement Class and Settlement Subclass......................................... 7
B.   Settlement Benefits ........................................................................ 7
C.   Class Notice, Right to Request Exclusion and to Object, and
     Settlement Administration.............................................................. 9
D.   Attorneys' Fees, Costs, and Service Payments...................................... 11
E.   Release ...................................................................................... 12

IV.  THE RULE 23 MOTION SHOULD BE GRANTED FOR PURPOSES
     OF NOTIFYING SETTLEMENT CLASS MEMBERS ................................. 13
A.   The Requirements Of Rule 23(b) Are Also Met ..................................... 13
1.   Numerosity .............................................................................. 14
2.   Commonality ........................................................................... 14
3.   Typicality ................................................................................ 15
4.   Adequacy of Representation ........................................................ 15
B.   The Requirements Of Rule 23(b) Are Also Met ..................................... 16
1.   Predominance .......................................................................... 16
2.   Superiority .............................................................................. 17

V.   THE COURT SHOULD PRELIMINARILY APPROVE THE
     SETTLEMENT AGREEMENT............................................................ 18
A.   Legal Standard ........................................................................... 18
B.   The Complexity, Expense And Likely Duration Of The Litigation ......................... 20
C.   The Stage Of The Proceedings And The Amount Of Discovery Completed ............. 20
D.   The Risks Of Establishing Liability and Damages and Maintaining
     The Class Action Through Trial ....................................................... 22
E.   The Ability Of The Defendant To Withstand A Greater Judgment; The Range Of
     Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery, And
     The Range Of Reasonableness Of The Settlement Fund In Light Of All The Attendant
     Risks Of Litigation ...................................................................... 23

VI.  THE PROPOSED NOTICES SHOULD BE APPROVED ................................. 24

VII. CONCLUSION .............................................................................. 25

i

CASES

*Am. Med. Ass'n v. United Healthcare Corp.*, No. 00 Civ. 2800, 2009 WL 1437819
 (S.D.N.Y. May 19, 2009)......................................................................................................... 24
*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)............................................................ 13
*Ayzelman v. Statewide Credit Servs. Corp.*, 238 F.R.D. 358 (E.D.N.Y. 2006)...................... 13
*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)............................................... 20
*Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623 (PAC), 04 Civ. 4488 (PAC), 06 Civ. 5672 (PAC),
 2010 WL 1948198 (S.D.N.Y. May 11, 2010)........................................................................ 21
*Collier v. Montgomery County Hous. Auth.*, 192 F.R.D. 176 (E.D. Pa. 2000)....................... 13
*Comer v. Cisneros*, 37 F.3d 775 (2d Cir. 1994)....................................................................... 14
*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995).................................. 14
*Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317 (S.D.N.Y. 2005) .......................................... 19
*Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 173 (1974) ................................................... 24
*Feder v. Harrington*, 58 F.R.D. 171 (S.D.N.Y. 1972).............................................................. 19
*Gautreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982) ................................................................. 19
*Hallmark v. Cohen & Slamowitz, LLP*, No. 11-cv-842S, 2013 WL 5178128
 (W.D.N.Y.Sep. 16, 2013)........................................................................................................ 12
*In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145 (2d. Cir. 1987) ..................................... 14
*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993)....................... 19
*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29 (2d Cir. 2009)............................ 15
*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400, 2010 WL 4537550
 (S.D.N.Y. Nov. 8, 2010)......................................................................................................... 22
*In re Giant Interactive Grp ., Inc. Sec. Litig.*, 279 F.R.D. 151 (S.D.N.Y. 2011)................... 21
*In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306 (E.D.N.Y. 2006) ........................... 19
*In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99 (S.D.N.Y. 1997)......................... 19
*In re Risk Mgmt. Alternatives, Inc., Fair Debt Collection Practices Act Litig.*,
 208 F.R.D. 493 (S.D.N.Y. 2002)............................................................................................ 17
*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001)....................... 16
*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997)..........................................................14, 15
*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007)............................... 8
*Maywalt v. Parker & Parsley Petroleum Co.*, 67 F. 3d 1072 (2d Cir. 1998) .......................... 18
*Moore v. Paine Webber, Inc.*, 306 F.3d 1247 (2d Cir. 2002)................................................... 16
*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26 (E.D.N.Y. 2006).........13, 24
*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ..............................................................14, 15
*Sykes, et al. v. Mel Harris and Assocs., LLC, et al.*, 285 F.R.D. 279 (S.D.N.Y. 2012).......... 18
*Vengurlekar v. Silverline Techs., Ltd.*, 220 F.R.D. 222 (S.D.N.Y. 2003) ............................... 14
*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982)..........................................................18, 24
*Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 1832181
 (S.D.N.Y. Apr. 30, 2013)....................................................................................................18, 19

STATUTES

15 U.S.C. § 1692e .................................................................................................. 3
15 U.S.C. § 1692k(a)(1) ....................................................................................3, 23
15 U.S.C. § 1692k(a)(2)(B) ...............................................................................3, 23

RULES

Fed. R. Civ. P. 23(a) .........................................................................................7, 14
Fed. R. Civ. P. 23(b)(3) .....................................................................................7, 16
Article 52 of New York's Civil Practice Law and Rules......................................... 7

TREATISES

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions,* § 10.15  (4th ed. 2002) ............. 8

# I.    INTRODUCTION

Plaintiff Elizabeth Coble ("Class Plaintiff"),[1] on behalf of herself and the members of the proposed Settlement Class, and Defendants Cohen & Slamowitz, LLP ("C&S"), David Cohen, Esq., Mitchell Slamowitz, Esq. (collectively, "Defendants"),[2] respectfully move the Court for preliminary approval of the Parties' Settlement Agreement ("Agreement") (filed contemporaneously).  If approved, the Agreement would fully and finally resolve this Fair Debt Collection Practices Act ("FDCPA") litigation challenging Defendants' allegedly deceptive conduct in connection with its efforts to collect on certain state court judgments.[3]

The Parties reached the Agreement after nearly two years of hard-fought litigation followed by many months of negotiations, including two full-day mediation sessions and numerous telephone conferences with a highly experienced mediator, the Hon. Stephen G. Crane (Ret.) of JAMS ("Judge Crane").  The Agreement provides meaningful monetary relief for Settlement Class members, including a $100,000 Settlement Class Fund for statutory damage payments to authorized claimants.  The Agreement also provides a $37,500 Settlement Subclass Fund to cover actual damages of authorized claimants who made involuntary payments in connection with the judgments C&S obtained against them.  In addition, the Agreement includes important non-monetary relief, including Defendants' warrant to cease sending collection letters and to forego initiating new garnishments or bank restraints that are grounded in the state court

---

[1] After due consideration of the material facts, Plaintiffs Milagros Harper and Dennis Harper have agreed to separately settle their claims against Defendants on an individual basis.  Those agreements are memorialized separately.  Agreement, at ¶ 28. The Harpers are not Settlement Class members, but nevertheless support this settlement. *Id.*

[2] If the settlement is preliminarily approved, all claims against individual defendants Leandre John, Esq., and Crystal S.A. Scott, Esq. will be dismissed with prejudice. Agreement, ¶ 35(h).

[3] The motion to approve the settlement is filed jointly and Defendants support the settlement.  However, this brief is filed on behalf of the Plaintiffs' only.

judgments at issue.  Finally, the Agreement provides access to Settlement Class members for documentation that will allow them to evaluate the validity of the state court judgments.

The negotiated relief is directly tailored to the FDCPA claims raised in the operative complaint and is significant in light of the inherent risks of ongoing litigation and the statutory limits on monetary recovery under the FDCPA. In particular, settlement is in the best interest of Settlement Class members because, if approved, they would be entitled to benefits now rather than facing the risk of ongoing litigation.  Indeed, even assuming a successful outcome, the non-monetary relief described above might not be obtainable by means of trial.  The Parties therefore believe that the Agreement is fair, reasonable, and adequate.  Accordingly, the Court should grant preliminary approval so that Settlement Class members can receive notice of their rights.

## II.     NATURE OF THE CASE

### A.      The Facts and Law Underlying The Action

In February, 2011, Plaintiffs brought a putative class action on behalf of tens of thousands of New York consumers who have been or are being sued in consumer collection actions by C&S that allegedly involved false affidavits of service (as amended "the Complaint") [Docket No. 21].  The Complaint asserted class claims against the Defendants for alleged violations of the FDCPA.

The class claims were brought on behalf of all persons who have been sued in a consumer collection action commenced in New York State in which C&S represented the state court Plaintiffs and the Affidavit of Service was signed and/or notarized by Midlantic Process, Inc., or any owner, agent or employee of Midlantic.  Midlantic had been hired by C&S to serve legal papers on defendants in debt collection actions. The Complaint alleged that the lawyers at C&S knew as early as 2006 that Midlantic's procedures regarding service of process had been

deficient and that the affidavits of service filed in their collection cases were false. Plaintiffs

further alleged that C&S concealed this information in order to facilitate ongoing collection

activities based on infirm judgments.

Plaintiffs claimed that Defendants' conduct violated various provisions of the FDCPA,

including Section 1692e, which provides that "[a] debt collector may not use any false,

deceptive, or misleading representations or means in connection with the collection of any debt."

15 U.S.C. § 1692e. Recovery of statutory damages in FDCPA class actions are limited to the

lesser of $500,000 or one percent of the net worth of the defendant debt collector for the class.

*See* 15 U.S.C. § 1692k(a)(2)(B). Actual damages are available under 15 U.S.C. § 1692k(a)(1).

Defendants have denied and continue to deny the material factual allegations and legal

claims Plaintiffs asserted in the lawsuit and do not believe the claims are meritorious. Among

other things, Defendants contend that Plaintiffs would not be able to prove any violations of the

FDCPA, and that Plaintiffs' claims are barred by the statute of limitations.

### B. The Procedural History of the Litigation

Plaintiffs filed their original complaint against Defendants on February 15, 2011. [Docket

No. 1]. Defendants moved to dismiss on the grounds that Plaintiffs' FDCPA claims, allowing for

a one-year statute of limitations period, were time-barred. [Docket No. 10]. The Court denied

Defendants' motion to dismiss on October 31, 2011. [Docket No. 15]. Plaintiffs filed an

Amended Complaint (pursuant to the Court's Scheduling Order) on December 9, 2011 [Docket

No. 21], adding additional factual allegations and a claim for actual damages pursuant to the

FDCPA. Defendants filed their Answer on December 20, 2011. [Docket No. 22].

The Parties then began discovery. Plaintiffs deposed former Midlantic process servers

Kenneth Vega and Alfred Smith as well as the principals of Midlantic.[4]  They also deposed C&S principals David Cohen, Esq. and Mitchell Slamowitz, Esq. as well as C&S Managing Attorney Leandre John, Esq. and former C&S attorney Crystal S.A. Scott, Esq.  Several discovery disputes arose between the Parties relating to Plaintiffs' request for production of documents relevant to class certification. Plaintiffs sought a randomly selected sample set of putative class members' collection files including affidavits of service, judgments, complaints, collection letters, and collection logs, to show numerosity, commonality, and manageability and Defendants' opposed. Magistrate Judge Yanthis ultimately ordered the production of collection files for more than 5,000 C&S cases.

Defendant also conducted discovery on the Class Plaintiff, as well as Plaintiffs Dennis and Milagros Harper, including taking their respective depositions. In addition, Defendants deposed attorney Joseph Mauro, Esq., who had been lead counsel in a previous federal litigation in which Mr. Vega had sworn out an affidavit detailing deficient service of process procedures at Midlantic.

During the course of the litigation, Defendants served Plaintiffs with several Offers of Judgment pursuant to Fed. R. Civ. P. Rule 68.  The first Offer of Judgment, dated June 11, 2012 provided for $5,000 each to Ms. Coble, Mrs. Harper and Mr. Harper, and attorney's fees and costs "in the amount of $10,000.00 or a reasonable amount to be determined by this Court," but did not provide any relief to the Class.  The second Offer of Judgment, dated November 6, 2012, provided for "$50,000.00 representing statutory damages for the entire class of Plaintiffs' and "reasonable attorneys' fees and costs in an amount to be determined by the Court."

By pre-motion letter dated November 6, 2012, Plaintiffs requested leave to file a Second

---

[4] Midlantic ceased operations in approximately 2007.  The company's principals, Robert and Vivianne Schusteritsch, are now retired, and were deposed in Fort Meyers, Florida.

Amended Complaint in order to (1) add more detailed factual allegations related to information disclosed in discovery; (2) add additional allegations regarding tolling of the statute of limitations under the Discovery Rule; (3) add a sub-class of consumers who had suffered actual damages in the form of money taken from them by Defendant in enforcements of the judgments obtained using Midlantic affidavits; (4) add claims for actual and punitive damages under N.Y. Gen. Bus. Law § 349 and New York Judiciary Law § 487 applicable to the proposed subclass; and (5) add a claim for restitution applicable to the proposed subclass. [Docket No. 34]. Defendant opposed the pre-motion letter by opposition letter dated November 27, 2012. Following a pre-motion conference, the Parties subsequently briefed these issues, and by Order dated April 9, 2013, Magistrate Judge Yanthis denied the motion to amend with regard to the subclass on grounds that the proposed relief was barred by the *Rooker-Feldman* doctrine. [Docket No. 48].

Plaintiffs moved to set aside Magistrate Yanthis's Order pursuant to Fed. R. Civ. P. 72(a). [Docket No. 51]. Based upon progress made in settlement negotiations, the briefing schedule regarding the motion was extended by the Court and, eventually, at the Parties' request, the motion was taken off the Calendar. [Docket No. 56].

### C. The Parties' Settlement Negotiations

On a parallel track with the litigation and discovery process, the Parties agreed to explore settlement. On October 19, 2012, the Parties engaged in their first full day mediation session with Judge Crane in New York City. Although the Parties engaged in extensive arms length settlement negotiations, they were unable to reach a resolution of the case at the October 19, 2012 mediation session. They therefore continued with discovery. Judge Crane remained involved following this session to assist the Parties in understanding and communicating their

respective settlement positions so they could determine whether they might resolve the case following additional negotiations. *See* Declaration of Gary Klein in Support of Preliminary Approval, ("Klein Decl."), ¶ 16; Declaration of Daniel A. Schlanger, Esq., ("Schlanger Decl."), ¶¶ 30-33.

The Parties agreed to engage in a second mediation session on June 18, 2013 with Judge Crane in New York City. At the June 18, 2013 mediation session, the Parties ultimately agreed on the major terms for relief for the class, and planned to memorialize this and other terms in an Agreement in Principle ("AIP"). Among other things, the AIP provided that Judge Crane would decide the appropriate amount of attorney's fees and costs without a right for the Defendants to further challenge Judge Crane's award (but subject to this Court's review and approval pursuant to Fed. R. Civ. P. 23(e)). In light of the AIP, Class Plaintiff submitted her Application for Attorneys' Fees and Costs to Judge Crane on October 16, 2013, and Defendants submitted their opposition on December 17, 2013.

During the course of negotiating the final Settlement Agreement, the Parties discovered significant misunderstandings that had informed the negotiation of the AIP and which therefore required renegotiation of certain key settlement terms. The Parties therefore sought additional time from the Court for filing their motion for preliminary approval while they engaged in further negotiations, with the assistance of Judge Crane. Additional briefing regarding Plaintiffs' application for attorney's fees and costs was also delayed, by agreement, in light of these further negotiations on core settlement terms. Klein Decl., ¶16. Final provisions for a written settlement agreement were not reached until March 20, 2014.

Under extensions approved by Judge Crane, Plaintiffs' reply papers on the fee application are now due on or before April 18, 2014. Thus, Judge Crane had not resolved the fee application

as of the date of filing this Joint Motion for Preliminary Approval.

## III.  KEY SETTLEMENT TERMS AND PROVISIONS FOR CLASS NOTICE

### A.  The Settlement Class and Settlement Subclass

For settlement purposes only, the Parties propose a Settlement Class defined in

Agreement, ¶21 as:

> [A]ll persons who have been sued in one or more consumer collection actions commenced in New York State between December 30, 2002 and the present in which C & S represented the state court Plaintiff; and the affidavit of service was signed and/or notarized by Midlantic or any owner, agent or employee of Midlantic.

The Parties also propose a Settlement Subclass defined in Agreement, ¶22 as:

> [A]ll Settlement Class members who made one or more Involuntary Payments[5] after October 30, 2006 following a judgment taken (on any date before or after October 30, 2006) in a consumer collection action commenced in New York State in which C & S represented the state court Plaintiff; and the affidavit of service was signed and/or notarized by Midlantic or any owner, agent or employee of Midlantic.

Defendants have represented that there are approximately 47,095 members of the

Settlement Class, including approximately 7,216 members of the Settlement Subclass.

Agreement, at ¶¶ 21-22.  As explained below, the Class Plaintiff seeks certification of the

proposed Settlement Class and Settlement Subclass under Fed. R. Civ. P. 23(a) and (b)(3).

### B.  Settlement Benefits

Under the terms of the Agreement, Defendants will pay $100,000 to establish a

Settlement Class Fund (for statutory damages) and $37,500 to establish a Settlement Subclass

Fund (for actual damages).  Agreement, at ¶¶ 45-46.  The Settlement Class Fund will be divided

*pro rata* on a claims-made basis.  Agreement, at ¶ 45.  If a *pro rata* distribution would result in a

---

[5] For the purposes of settlement, an "Involuntary Payment" is any payment made by means of any device set forth in Article 52 of New York's Civil Practice Law and Rules ("Money Judgments – Enforcement") including, without limitation, wage garnishment, levy, execution, bank restraint or other process covered by the statute. Agreement, ¶11.

claim payment amount of less than $7.50 per claimant, therefore making it uneconomical to distribute payments, the entire amount of the Settlement Class Fund will be paid to one or more mutually acceptable providers of free legal services in the Southern District of New York, subject to Court approval.[6] *Id*.

The $37,500 Settlement Subclass Fund will be divided among members of the Settlement Subclass who submit valid claims by payments of $125 per claimant or the total amount of the involuntary payment (whichever is less). Agreement, ¶ 46. In the event that the amount of the Settlement Subclass Fund is less than the amount necessary to pay all subclass claimants in full, the Settlement Subclass Fund payments will be distributed *pro rata* so as to not exceed the $37,500 fund limit. *Id*., at ¶ 46(a). In the event that the Settlement Subclass Fund is more than the amount necessary to pay all Settlement Subclass claimants, any amount remaining will be added to (i.e. pour over to) the Settlement Class Fund to be distributed *pro rata* to the Settlement Class. *Id*., at ¶ 46(b). Therefore, none of the total $137,500 that the Defendants have agreed to pay will revert back to the Defendants.

Unclaimed funds arising because a Settlement Class member or a Settlement Subclass member does not cash a check made as a claims payment will be paid to one or more mutually acceptable providers of free legal services in the Southern District of New York and approved by the Court. *Id*., at ¶ 49.

In addition to the monetary benefits provided in the settlement, the Settlement Class and Settlement Subclass will benefit from Defendants' representations and warranties that they are

---

[6] Although this issue need not be resolved now, there is substantial precedent permitting *cy pres* distribution of money that cannot feasibly be distributed to class members. *See* 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 10.15 (4th ed. 2002) ("cy pres ...distributions serve the objectives of compensation for the class (albeit in an indirect manner), access to judicial relief for small claims, and deterrence of illegal behavior.") *Cf. Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 435-36 (2d Cir. 2007) (discussing authority of the District Court to approve).

not currently and will not in the future send collection letters or commence any new post judgment collection actions (e.g., wage garnishment, bank restraint, taking of liens, issuance of post-judgment discovery devices) with regard to judgments involving Midlantic affidavits of service. Agreement, at ¶ 51. The Parties agree that this representation and warranty will not apply to post-judgment collection efforts that are already in place with regard to a particular account (e.g. already commenced wage garnishment, liens that are already in place, etc.). *Id.*

In addition, the settlement website will include a hyperlink to case-related documents, including, *inter alia*, former Midlantic process server Kenneth Vega's sworn affidavit in *Caprino et al. v. Cohen & Slamowitz, et al.* and the deposition testimony of Alfred Smith taken in this case, regarding Midlantic's service of process procedures. Agreement, at ¶ 52. The availability of these documents will give class members an opportunity to evaluate whether the state court judgments against them are valid.

### C. Class Notice, Right to Request Exclusion and to Object, and Settlement Administration

Defendants will provide the Settlement Administrator the information necessary to identify Settlement Class and Subclass members. Agreement, ¶ 41. To avoid confusion about the separate Settlement Subclass fund, which is available to Subclass members only, the Parties have proposed a notice plan consisting of two forms of notice based on whether or not the class member is in the Settlement Subclass. If approved, the plan will proceed as follows:

The Settlement Administrator will prepare two mailing lists: Mailing List #1 will include all persons who meet the Settlement Class definition set forth in Paragraph 21 of the Agreement, other than members who also meet the Settlement Subclass definition set forth in Paragraph 22 of the Agreement. *Id.*, at ¶ 41(a). Mailing List #2 will include all persons who meet both the Settlement Class and the Settlement Subclass definitions. *Id.*

The Parties have submitted two forms of "Short Form Notice" for approval, attached to the Agreement as Exhibits C-1 and C-2. *Id*., at ¶ 41(b). The C-1 form of Notice will be sent to Settlement Class members on Mailing List #1 (members of the class who are not also in the subclass), and the C-2 form of Notice will be sent to Settlement Subclass members on Mailing List #2 (members of the subclass only).

The Parties have also submitted two forms of Long Form Notice for approval, appropriate for the Settlement Class or the Settlement Subclass (Agreement, Exhibits D-1 and D-2, respectively), as well as two Claim Forms (Agreement, Exhibits A-1 and A-2). These documents will be made available to Settlement Class and Settlement Subclass members on a website to be established and maintained by the Settlement Administrator. *Id*., at ¶ 41(d).[7] The URL of the settlement website is displayed prominently in the proposed Short Form Class notices. *Id*., at ¶ 52. The website will remain active and accessible for two years after final approval of the settlement.

Within 30 days of the Court's entry of the Preliminary Approval Order, the Settlement Administrator will mail the appropriate Short Form Notice to the last known address of identified Settlement Class and Subclass members by First Class U.S. Mail, postage prepaid. *Id*., at ¶ 41(c). Any Notice returned undelivered by the U.S. Postal Service will be evaluated by the Settlement Administrator using its normal database follow-up procedures, and the Notice will be re-mailed if a more current address can be identified. *Id*. The short form notices contain basic information about the settlement and direct class members to the settlement website for more information.

The two claims forms (A-1 and A-2), to be made available on the settlement website, are

---

[7] Class members will be directed to the correct form of notice and claim form based on a claims number that will be provided in the short form notice.

simple and straightforward to complete. The Parties propose that the claims deadline be set by the Court to occur sixty (60) days after the date on which notice is mailed. The claims bar date set by the Court will be prominently included in all forms of Notice. *See* Exhibits C-1, C-2, D-1, and D-2.

Requests for exclusion from the settlement must be in writing, must be sent by First Class U.S. Mail, postage prepaid, to the P.O. Box established by the Settlement Administrator, and must be postmarked by a date set by the Court. *Id*., at ¶ 41(f). The Parties request that this deadline occur sixty (60) days after the date the notice and is mailed and represent that the actual date will be included in each form of Notice.

Any Settlement Class or Settlement Subclass member who wishes to object to the settlement must send a written objection ("Objection") to the Settlement Administrator by First Class U.S. Mail, postage prepaid, to the Post Office Box established by the Settlement Administrator, postmarked by the deadline specified in the Notice. Again, the Parties request that this deadline occur sixty (60) days after the date the notice and is mailed and represent that the actual date will be included in each form of Notice. All objections must be filed with the Court and served on Class Counsel and on counsel for Defendants at addresses specified in the Notice. *Id*., at ¶ 57.

Defendants will pay all costs reasonably incurred by the Settlement Administrator to provide the services specified in this Settlement Agreement. *Id*., at ¶ 43.

### D. Attorneys' Fees, Costs, and Service Payments

Subject to Court approval, Defendants will pay Class Counsel the amount of reasonable attorneys' fees and costs as decided by Judge Crane. *Id*., at ¶ 61. The Class Plaintiff, through Class Counsel, has submitted Class Counsel's fee application and supporting documentation to Judge Crane, and the Defendants have submitted their opposition. Class Plaintiff's reply is due

on or before April 18, 2014. The amount that Class Plaintiff is seeking in fees and costs will be included in the class notice. The Court will be able to review any objections made on the basis of that disclosure and, although Defendants may not object, to approve (or modify or disapprove) the amount recommended by Judge Crane at the time of the Fairness Hearing.

Defendants have also agreed to pay the Class Plaintiff a service payment in the amount of $5,000 if approved by the Court. *Id.*, at ¶ 47. Importantly, neither the attorneys' fees and costs nor the service payment will diminish the benefits to the Settlement Class or Subclass.

### E.    Release

In exchange for settlement benefits, Settlement Class members who are not also Settlement Subclass members and who do not opt out will release claims only for statutory (but not actual) damages under the FDCPA and all claims that were raised or could have been raised in the case based on a common nucleus of operative facts other than FDCPA actual damage claims, provided however that: (i) the release shall not include any defense to any of the underlying state court actions and/or judgments; and (ii) the release shall not include waiver or release of any claim any Settlement Class member may have in *Hallmark v. Cohen & Slamowitz, LLP*. *See Hallmark v. Cohen & Slamowitz, LLP*, No. 11-cv-842S, 2013 WL 5178128 (W.D.N.Y. Sep. 16, 2013). Agreement, at ¶ 18(a). Likewise, Defendants agree that any release entered into in *Hallmark* shall not apply to any claims arising in this case. *Id*. This release is appropriately limited for Settlement Class members to exclude FDCPA actual damages claims and to allow Settlement Class members to recover, if applicable, in another pending and possibly overlapping class action case.

Settlement Subclass members who do not opt out will be subject to the same release described above contained in Paragraph 18(a) of the Agreement, but will also release actual damage claims under the FDCPA in light of the payments to be made on those claims. *Id*., at ¶

18(b). The Class Plaintiff will release all of her claims as described in Paragraphs 18(a) and (b) of the Agreement, as well as all other claims she may have against Defendants. *Id.*, at ¶ 18(c).

Importantly, Class members and Settlement Subclass members are not giving up *any* defenses they may have in the state court collection lawsuit in which the Midlantic affidavit was filed. *Id.*, at ¶ 18(a). For example, if a Class member was not properly served with the Summons and Complaint in the state court lawsuit, s/he is not waiving the right to seek to have the judgment vacated or to have the case dismissed based on lack of service.

## IV. THE RULE 23 MOTION SHOULD BE GRANTED FOR PURPOSES OF NOTIFYING SETTLEMENT CLASS MEMBERS

For settlement purposes only, the Class Plaintiff seeks conditional certification of the Settlement Class and Settlement Subclass set forth above in Section III.A. Under Federal Rule 23(c)(1) "'the court can make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date.'" *Ayzelman v. Statewide Credit Servs. Corp.*, 238 F.R.D. 358, 362 (E.D.N.Y. 2006) (quoting *Collier v. Montgomery County Hous. Auth.*, 192 F.R.D. 176, 181 (E.D. Pa. 2000). Indeed, "[c]ertification of a class for settlement purposes only is permissible and appropriate." *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-21 (1997). Here, the Class Plaintiff seeks certification for settlement purposes under Fed. R. Civ. P. 23(a) and 23(b)(3).

### A. The Requirements Of Rule 23(a) Are Met Here

Rule 23(a) provides that: [o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class,

(4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In addition to satisfying Rule 23(a), a plaintiff must satisfy one of three criteria set forth in Rule 23(b). *See Comer v. Cisneros*, 37 F.3d 775, 796 (2d Cir. 1994).

## 1. Numerosity

A plaintiff is not obligated to identify the exact number of class members. *See Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). However, the Second Circuit has previously determined that numerosity is presumed at a figure of forty. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Here, Defendants represent that there are approximately 47,095 Settlement Class members. The numerosity requirement is clearly met.

## 2. Commonality

Commonality is satisfied "if Plaintiff's grievances share a common question of law or fact." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). Put another way, what is needed is a common nucleus of operative facts or an issue that affects all members of the class. There need only be a single issue common to all members of the class. *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 166-67 (2d. Cir. 1987). Individual circumstances of the class members may differ without precluding class certification. *See Vengurlekar v. Silverline Techs., Ltd.*, 220 F.R.D. 222, 227 (S.D.N.Y. 2003).

Here, the Class Plaintiff and Settlement Class members share common issues because they have all been defendants in collection lawsuits brought by C&S that relied on affidavits of service generated by Midlantic and they all allege that Defendants' conduct in relation to those affidavits of service violates the FDCPA. The core common question is whether C&S concealed from Class Plaintiff, the Settlement Class members and the state courts that it no longer had a good faith basis to believe in the accuracy, truthfulness and propriety of the Midlantic affidavits

of service in order to facilitate its collection efforts.

### 3. Typicality

Typicality is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux*, 987 F.2d at 936-37.  "When it is alleged that the same unlawful conduct was directed at or affected both the class and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying the individual claims." *Id.*

For the same reasons that commonality is satisfied, typicality is also satisfied here, *i.e.*, the same unlawful conduct affecting the Class Plaintiff also affected Settlement Class members.

### 4. Adequacy of Representation

To satisfy this factor, a plaintiff must demonstrate two elements: (1) "there is no conflict of interest between the Class Plaintiff and other members of the plaintiff class" and (2) "class counsel is qualified, experienced, and generally able to conduct the litigation." *Marisol. A.*, 126 F.3d at 378 (internal citations and quotations omitted); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009)  (conceptualizing first prong as whether "plaintiff's interests are antagonistic to the interest of other members of the class").

In this matter, Plaintiffs' counsel Schlanger & Schlanger, LLP and Klein Kavanagh Costello, LLP are each qualified and experienced attorneys, fully familiar with consumer and debtor litigation, the FDCPA and class action practice.  Mr. Schlanger and Mr. Klein have each submitted declarations setting forth their respective credentials.  Klein Decl., ¶¶ 2-8, 12; Schlanger Decl., ¶¶ 5-28.

These attorneys will adequately represent the Settlement Class.  Further, there is no

antagonism between the Class Plaintiff's claims and those of the proposed Settlement Class that would interfere with the Class Plaintiff's ability to act as Settlement Class Representative. The Plaintiff and Settlement Class members all were subject to judgments founded on service by a Midlantic process server.

**B.     The Requirements Of Rule 23(b) Are Also Met**

Rule 23(b)(3) provides that certification is appropriate when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) is satisfied because the class settlement is the superior and appropriate method for the fair and efficient resolution of this matter.

**1.     Predominance**

With respect to Rule 23(b)(3), the Court's inquiry is a two-step process. "In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001); *see also Moore v. Paine Webber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002) (finding predominance met "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof"). If predominance is found, a Court must also determine whether "a class action is superior to other available methods for . . . adjudicating a controversy." Fed. R. Civ. P. 23(b)(3).

This case involves allegedly false statements, signatures and notarizations contained in

form affidavits of service and related affirmations filed in New York state courts, and the

attempts of attorneys at C&S to collect from consumers without disclosing the fact that they no

longer had a good faith belief in the accuracy of these affidavits and affirmations. Notably, not

only are the affidavits and affirmations in question all boilerplate documents that are virtually

identical with regard to the issues in this case, but the affidavits were all filed by or on behalf of

C&S, the attorney affirmations were all sworn to by C&S attorneys, and the collection efforts

were all undertaken by C&S attorneys using that office's highly automated and standardized

procedures, including standardized collection letters relating to the judgments obtained on the

basis of Midlantic affidavits. As such, the common issues in the instant case predominate over

any issues that would be subject to individualized proof.

### 2. Superiority

A class action is the superior method for the "fair and efficient adjudication" of this suit,

potentially involving 47,095 individuals with identical or virtually identical claims. "Suits

brought under the FDCPA such as this case [concerning the use of standardized documents]

regularly satisfy the superiority requirement of Rule 23." *In re Risk Mgmt. Alternatives, Inc.*,

*Fair Debt Collection Practices Act Litig.*, 208 F.R.D. 493, 507 (S.D.N.Y. 2002). The *recent*

superiority analysis in a similar case alleging problems with state court process is applicable

here:

> [A class action] is, without question, more efficient than requiring thousands of
> debtors to sue individually. Indeed, the class members' interests in litigating
> separate actions is likely minimal given their potentially limited means with
> which to do so and the prospect of relatively small recovery in individual actions.
> Moreover, as the alleged conduct occurred in New York City Civil Court,
> concentrating the litigation of these claims in this particular forum is
> desirable. Finally, as discussed above, any difficulties likely to arise in managing
> this class action are not beyond the realm of the "management tools" the Court
> has at its disposal.

*Sykes, et al. v. Mel Harris and Assocs., LLC, et al.*, 285 F.R.D. 279, 294 (S.D.N.Y. 2012)

("*Sykes*") (citations omitted).

As in *Sykes*, class certification is the superior method for resolving this FDCPA case involving tens of thousands of debtors, many of whom may not have been aware they have potential legal claims against Defendants. Moreover, it is not economical for debtors to hire counsel and pursue lawsuits to recover the relatively small damages at issue in this case. Certifying the class for settlement purposes is therefore appropriate and will allow individuals who otherwise have no means of recovering their damages an opportunity to receive settlement benefits, including both the monetary and non-monetary benefits described above.

All of the requirements of Fed. R. Civ. P. 23(a) and (b)(3) are met. Accordingly, the Court should conditionally certify the proposed Settlement Class and Settlement Subclass to allow the settlement to proceed.

## V. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AGREEMENT

### A. Legal Standard

In deciding whether ultimately to approve a proposed class action settlement, the Court must determine whether the compromise is fair, reasonable and adequate. *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982), *cert. denied*, 464 U.S. 818 (1983). Courts have discretion regarding the approval of a proposed class action settlement. *Maywalt v. Parker & Parsley Petroleum Co.,* 67 F. 3d 1072, 1079 (2d Cir. 1998). "In exercising this discretion, courts should give weight to the parties' consensual decision to settle class action cases because they and their counsel are in unique positions to assess potential risks." *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 1832181, at *1 (S.D.N.Y. Apr. 30, 2013) (citation omitted).

Preliminary approval of a proposed settlement is step one of a two-step process before a class action can be settled. *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). A preliminary evaluation into the fairness of the settlement is undertaken prior to notice. If the proposed settlement "appears to fall within the range of possible approval," the court should order that the class members receive notice of the settlement. *Yuzary*, 2013 WL 1832181, at *1 (quotation omitted).

Public policy favors the settlement of class actions. *See Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 328 (S.D.N.Y. 2005) ("'There is a 'strong judicial policy in favor of settlements, particularly in the class action context.' . . . The compromise of complex litigation is encouraged by the courts and favored by public policy'") *aff'd in part and vacated in part*, 443 F.3d 253 (2d Cir. 2005) (internal citations omitted). "There is a strong public interest in quieting any litigation; this is 'particularly true in class actions.'" *In re Luxottica Group S.p.A. Sec. Litig.,* 233 F.R.D. 306, 310 (E.D.N.Y. 2006) (citations omitted).

The opinion of Class Counsel with substantial experience in consumer litigation as to the desirability of settlement is an important consideration. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312-13 (N.D. Ga. 1993). "Judges should not substitute their own judgments as to optimal settlement terms for the judgment of the litigants and their counsel." *Gautreaux v. Pierce*, 690 F.2d 616, 638 (7th Cir. 1982); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 313. Indeed, there is a "strong initial presumption" that an arms-length settlement arrived at by counsel experienced in the type of litigation involved on the basis of sufficient information concerning the claims at issue is fair. *Feder v. Harrington*, 58 F.R.D. 171, 174 (S.D.N.Y. 1972). Class counsel here has extensive experience in representing consumers, in FDCPA litigation and in class actions generally. Klein Decl., ¶¶ 2, 5-7, 9-10, 12; Schlanger

Decl., ¶¶ 13-17.

A brief examination of the proposed settlement, using the relevant factors laid out by the Second Circuit for evaluating the substantive fairness of a class action settlement in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), show that this settlement should be given the Court's preliminary approval. The *Grinnell* factors include: (1) the complexity, expense and likely duration of the litigation; (2) the stage of the proceedings and the amount of discovery completed; (3) the risks of establishing liability and damages; (4) the risks of maintaining the class action through the trial; (5) the ability of the defendants to withstand a greater judgment and the range of reasonableness of the settlement fund in light of the best possible recovery. *Id.*

### B. The Complexity, Expense And Likely Duration Of The Litigation

Here, the Defendants have denied liability. While the FDCPA is a strict liability statute, and the Class Plaintiff believes that the practices complained of are clear violations of the law, a trial would be necessary to resolve the issue. The Defendants have not agreed to class certification except for purposes of settlement, so motion practice would be necessary on class certification. Defendants have also made clear that, absent settlement, they intended to move for summary judgment on a variety of grounds.

Indeed, even assuming Plaintiffs were to prevail on the merits the Defendant could engage in an appeal, further delaying any relief to Plaintiffs or class members for many additional months or years. The Agreement, if approved, will yield a quick and certain benefit to the Settlement Class, and avoid additional prolonged litigation.

### C. The Stage Of The Proceedings And The Amount Of Discovery Completed

The Parties were fully apprised of the strengths and weaknesses of their respective claims

and defenses at the time they decided to explore settlement. As discussed in Section II.B., *supra*, the Parties litigated this case for nearly two years before discussing settlement. That litigation included, among other things, motion practice on Defendants' motion to dismiss, Plaintiffs' motion to amend her original complaint and briefing on the applicability of the *Rooker-Feldman* doctrine. The Parties had also obtained substantial discovery at the time they began discussing settlement, and continued the discovery process until they were ultimately able to come to the principal terms of the Agreement. In addition to the formal discovery described above, Class Counsel and Defendants' counsel have engaged in confirmatory discovery for the purpose of verifying Defendants' net worth and identifying Settlement Class members. Class Counsel have thus assured themselves that they have enough information to assess the fairness of the proposed settlement.

Moreover, as detailed in Section II.C., *supra*, the Agreement is the result of exhaustive negotiations between the Parties over the course of the past sixteen months. In addition to two full day mediation sessions with Judge Crane, the Parties have engaged in numerous settlement conferences and have engaged in innumerable additional telephone calls, email exchanges, and exchanges of proposed settlement documents both with and without Judge Crane's assistance. The negotiations here were hard fought and undeniably conducted at arms length, which strongly supports the fairness and reasonableness of the settlement. *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623 (PAC), 04 Civ. 4488 (PAC), 06 Civ. 5672 (PAC), 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010) (finding that, "a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery."); *In re Giant Interactive Grp ., Inc. Sec. Litig.,* 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (parties were entitled to a presumption of fairness where mediator facilitated

arms length negotiations).  The involvement of an experienced mediator confirms the arms

length nature of the process.  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400,

2010 WL 4537550, at \*14 (S.D.N.Y. Nov. 8, 2010) (experience and skill of mediator contribute

to presumption of fairness).

      While Plaintiffs do not concede the propriety or enforceability of Defendants' Rule 68

Offers of Judgment (*see* Section II.B., supra), it is also important to note that the Class Plaintiff

did not accept either of the Offers and, instead, continued to negotiate, resulting in significantly

increased benefits for the Class Members.

      **D.**    **The Risks Of Establishing Liability and Damages and Maintaining The Class Action Through Trial**

      Among other defenses, Defendants maintain that they will be able to prove at trial that

they did not actively conceal their allegedly wrongful conduct such that Plaintiffs' theory of

equitable tolling (extending the otherwise short FDCPA one year statute of limitations) will fail.

While Plaintiffs are confident in their equitable tolling theory based on the facts of the case,

most, if not all, of the Settlement Class would be barred from recovering anything if Plaintiffs

were unable to make a showing that Defendants actively concealed their wrongful conduct such

that the Court should equitably toll their claims. This alone presents a significant litigation risk to

Plaintiffs and the putative Class.

      In addition, the Plaintiffs have not yet moved for class certification at the time of

settlement. Therefore, settlement of this litigation removes any risk that class certification would

be denied or that, if granted, such decision could be appealed.  If the litigation were to continue it

would be many months before the Parties would fully develop the evidence in support (and

opposition) of class certification, engage in the necessary motion practice, and have oral

argument on class certification. If the Plaintiffs prevailed at class certification, Defendants may

have a right to appeal the Court's decision. Litigating an appeal of the Court's decision could take months or perhaps years. In the meantime, Settlement Class members would have no notice of this lawsuit and risk receiving no compensation. In addition, Defendants have argued that many Settlement Class members' claims are barred by the one-year statute of limitations provided for under the FDCPA. If Plaintiffs lost at class certification, Settlement Class members may quickly lose the ability to bring their claims and obtain relief.

**E.      The Ability Of The Defendant To Withstand A Greater Judgment; The Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery, And The Range Of Reasonableness Of The Settlement Fund In Light Of All The Attendant Risks Of Litigation**

Recovery of statutory damages in FDCPA class actions is limited to the lesser of $500,000 or one percent of the net worth of the defendant debt collector for the remainder of the class. *See* 15 U.S.C. §§ 1692k(a)(1), (a)(2)(B). The proposed settlement signifies a significant accomplishment inasmuch as the Settlement Class Fund of $100,000, in the context of litigation against a law firm and in light of confirmatory discovery, is consistent with one percent of the Defendants' combined net worth.

In addition, by securing a $37,500 pool for actual damages under the FDCPA, those who made involuntary payments based on the judgment against them (i.e., those who have suffered the greatest financial harm in light of the alleged legal violations) will have additional recourse. The settlement's provision for an actual damages subclass and a $37,500 subclass fund is particularly notable given the fact that Plaintiffs' attempt to amend the complaint to include such a subclass and to claim for actual damages on this basis was denied by Magistrate Yanthis. *See* Section II.B, *supra*; Docket No. 48. While Plaintiffs believe that their motion to set aside Magistrate Yanthis' ruling on this issue was meritorious, positive outcomes on such motions are highly uncertain.

Finally, this settlement provides significant non-monetary benefits in the form of protection from certain further collection activities related to the state court judgments and in providing notice to class members that may allow them to evaluate their options with respect to the state court judgments. While these benefits are difficult to quantify, they contribute to the conclusion that the settlement has significant and material benefits to the class commensurate with the value of the claims at issue.

## VI. THE PROPOSED NOTICES SHOULD BE APPROVED

Once the Court preliminarily approves the settlement, notice is given to the class members of a fairness hearing, at which time class members and the settling parties may be heard with respect to final court approval. *Am. Med. Ass'n v. United Healthcare Corp.*, No. 00 Civ. 2800, 2009 WL 1437819, at *3 (S.D.N.Y. May 19, 2009). Pursuant to Rule 23(c)(2)(B), when a class is certified under Rule 23(b)(3), the Court must direct to the class members "the best notice practicable under the circumstances, including individual notice to all members, who can be identified through reasonable effort." With regard to class certification pursuant to a settlement, the notice "must fairly apprise the prospective members of the class of the pendency of the class action, the terms of the proposed settlement, and the options that are open to them in connection with the proceedings, including the option to withdraw from the settlement." *Reade-Alvarez*, 237 F.R.D. at 34 (citing *Weinberger v. Kendrick*, 698 F.2d at 70-71).

As a general rule, due process requires individualized notice where the names and addresses of class members "may be ascertained through reasonable effort." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 173, 177 (1974). Here, class members' names and last known addresses are available in Defendants' records.

The proposed Notices meet the requirements of Rule 23(c)(2)(B). Each form of Notice

contains all the necessary information, including the nature of the lawsuit, the definition of the

Class and Subclass, the settlement terms, and the options available to the members of the class.

In addition, the Agreement states that the Defendant shall mail the Short Form Notices to each

class member at his/her last known address, with normal procedures for address updating when

mail is returned. The Long Form Notices and the Settlement Administrator's website will then

provide additional information to Settlement Class members.  The proposed notice plan is thus

calibrated to minimize administrative costs, but to maximize the availability and impact of the

key information necessary for class members to evaluate their rights.

## VII.    CONCLUSION

For the reasons set forth above, the Parties' Joint Motion for Preliminary Approval of

Class Settlement should be granted and the Court should set deadlines for notice, claims,

exclusions, objections, and a date for fairness hearing under Rule 23.  The Parties jointly request

that the deadlines for notice, claims, exclusions and objections be set for sixty (60) days

following the date that notice is mailed and that the fairness hearing be set for a date that is no

earlier than 110 days after the preliminary approval order is entered.

March 21, 2014

Respectfully Submitted,

/s/ *Gary Klein*
Gary Klein
Shennan Kavanagh
Klein Kavanagh Costello, LLP
85 Merrimac Street, 4th Floor
Boston, Massachusetts 02114
Phone: 617-357-5500
Fax: 617-357-5030
klein@kkcllp.com
kavanagh@kkcllp.com

/s/ *Daniel A. Schlanger*
Daniel A. Schlanger, Esq.
Schlanger & Schlanger, LLP
9 East 40th Street, Suite 1300
New York, NY 10016
Ph: 914-946-1981
Fax: 914-946-2930
daniel@schlangerlegal.com

**CERTIFICATE OF SERVICE**

I, Gary Klein, hereby certify that a true and accurate copy of the foregoing was filed electronically via the Court's ECF system, on March 21, 2014. Notice of electronic filing will be sent to all parties by operation of the Court's electronic filing system.

/s/ Gary Klein

Gary Klein, Esq.
Klein Kavanagh Costello, LLP
85 Merrimac Street, 4th Floor
Boston, MA 02114
Ph: 617-357-5500
Fax: 617-357-5030
klein@kkcllp.com