UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Elizabeth Coble, Milagros Harper, and Dennis Harper, on behalf of themselves and all others similarly situated, | Index:  11-cv-01037 |
| Plaintiffs, | |
| v. | Hon. Edgardo Ramos |
| Cohen & Slamowitz, LLP, David Cohen, Esq., Mitchell Slamowitz, Esq., Leandre John, Esq., and Crystal S.A. Scott, Esq., | Hon. George A. Yanthis |
| Defendants. | |

**PLAINTIFF'S (UNOPPOSED) MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

**I.      INTRODUCTION**

Settlement Class Representative Elizabeth Coble ("Plaintiff"),[1] on behalf of herself and the members of the proposed Settlement Classes, and Defendants Cohen & Slamowitz, LLP ("C&S"), David Cohen, Esq., Mitchell Slamowitz, Esq. (collectively, "Defendants"),[2] respectfully move the Court for final approval of the parties' class action settlement.[3] On May 27, 2014, the parties filed a Settlement Agreement and Release of Claims ("Agreement"), which, upon final approval, will fully and finally resolve this Fair Debt Collection Practices Act ("FDCPA") litigation challenging Defendants' allegedly deceptive conduct in connection with its efforts to collect on certain state court judgments. [Docket No. 76].[4]

---

[1] As previously noted, after due consideration of the material facts, Plaintiffs Milagros Harper and Dennis Harper have agreed to separately settle their claims against Defendants on an individual basis. Those agreements are memorialized separately. Settlement Agreement and Release of Claims ("Agreement"),  at ¶28. The Harpers are not Settlement Class members, but nevertheless support this settlement. *Id.*
[2] If the settlement is approved, all claims against individual defendants Leandre John, Esq., and Crystal S.A. Scott, Esq. will be dismissed with prejudice. Agreement, ¶35(h).
[3] The motion to approve the settlement is filed jointly, and Defendants support the settlement.  This brief is filed on behalf of the Plaintiff only, but is unopposed.
[4] The parties originally submitted the Settlement Agreement and Release of Claims on March 21, 2014 (Docket No.

1

The Court preliminarily approved the Agreement and certified the Settlement Class and Subclass for settlement purposes on May 29, 2014. [Docket No. 77]. The forms of Notices approved by the Court were disseminated in accordance with the Preliminary Approval Order on July 15, 2014. Declaration of Tristan Kernick ("Administrator's Decl."), at ¶8-9; [Docket Nos. 77 (Preliminary Approval Order), and 79 (Endorsed Letter Order)]. On August 22, 2014, Plaintiff submitted her Application for Award of Stipulated Attorney's Fees and Costs ("Fee Application") which was posted on the Settlement Administrator's website on August 23, 2014. [Docket No. 81]; Administrator's Decl., ¶10. Thus, all measures for class notification in the Court's Preliminary Approval Order and Fed. R. Civ. P. 23 have been followed.

Following class notice dissemination, the Settlement Class's response to the Settlement has been overwhelmingly positive. Notices were sent to 50,892 class members and only 1 individual objected because she believed that she was not properly included in the Subclass. Following her objection, Plaintiff's counsel conferred with the objector, Defense counsel and the Settlement Administrator, and the objection has been resolved by agreement to reclassify her as a Subclass member. She subsequently formally withdrew her objection. No Settlement Class or Subclass member objected to the stipulated amounts of attorneys' fees and costs Plaintiff requests. No Settlement Class or Subclass member objected to the amount of the named Plaintiff's service payment Plaintiff seeks. No Settlement Class or Subclass member objected to the release. As such, there is no opposition to the Settlement Agreement.

Notably, only 11 individuals timely requested to be excluded from the settlement. Administrator Decl., ¶ 16. By contrast, as of the claims deadline, September 13, 2014, a total of 880 Settlement Class and 272 Subclass members have submitted claims.

---

63), and subsequently resubmitted it with its ancillary documents to incorporate comments from the Court regarding the ancillary documents after a status conference held on May 22, 2014. *See*, Docket No. 75.

The Agreement is fair, reasonable and adequate and should be granted final approval under Rule 23. The parties reached the Agreement after nearly two years of hard-fought litigation followed by many months of negotiations, including two full-day mediation sessions and numerous telephone conferences with a highly experienced mediator, the Hon. Stephen G. Crane (Ret.) of JAMS ("Judge Crane").  The Agreement provides meaningful monetary relief for Settlement Class members, including a $100,000 Settlement Class Fund for statutory damage payments to authorized claimants, as well as a separate $37,500 Settlement Subclass Fund to cover actual damages of authorized claimants who made involuntary payments in connection with the judgments C&S obtained against them.  Indeed, in light of confirmatory discovery regarding Defendants' net worth, the Settlement Class Fund constitutes most, and perhaps all, of what could have been won at trial, given that recovery of statutory damages is limited to the lesser of $500,000 or one percent of the net worth of the defendant debt collector pursuant to the FDCPA.  15 U.S.C. §§ 1692k(a)(1), (a)(2)(B).  In addition, the Agreement provides important non-monetary relief, including Defendants' warrant to cease sending collection letters and to forego initiating new garnishments or bank restraints that are grounded in the state court judgments at issue.  Finally, the Agreement provides access to Settlement Class members for documentation that will allow them to evaluate the validity of the state court judgments.

The negotiated relief is directly tailored to the FDCPA claims raised in the operative complaint and is significant in light of the inherent risks of ongoing litigation and the statutory limits on monetary recovery under the FDCPA. In particular, settlement is in the best interest of Settlement Class members because, if approved, they would be entitled to benefits now rather than facing the risk of ongoing litigation.  Indeed, even assuming a successful outcome, the non-monetary relief described above might not be obtainable by means of trial.

For these reasons, which are more fully discussed below, the Court should find that the Agreement is fair, reasonable, and adequate and worthy of final approval. The parties and their counsel support approval of the Agreement, and Judge Crane has attested to the hard-fought, arm's-length settlement negotiations and has also arbitrated the disputed issues of the amounts of attorneys fees and costs Defendants will pay subject to Court approval. Declaration of Hon. Stephen G. Crane (Ret.) in Support of Motion for Approval of Class Action Settlement ("Crane Decl."), ¶¶2-8 [Docket No. 70] ("I am familiar with counsel for both sides and their law firms, and know they have significant experience and expertise about the substantive and procedural issues in this litigation. Both sides vigorously represented the interests of their clients."). "A presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F. 3d 96, 116 (2nd Cir. 2005).

## II.     BACKGROUND

As described in detail in Plaintiff's Memorandum in Support of Joint Motion for Preliminary Approval of Class Settlement at 2-6 (Docket No. 65) ("Preliminary Approval Memo"), Plaintiff brought a putative class action on behalf of New York debtors who Cohen & Slamowitz ("C&S") sued in collection actions using Midlantic Process, Inc. as a process server. Plaintiff alleged that C&S knew as early as October 2006 that Midlantic's procedures regarding service of process had been deficient and that the affidavits of service filed in their collection cases were false. Plaintiff further alleged that C&S concealed this information in order to facilitate ongoing collection activities based on infirm judgments. Plaintiff claimed that Defendants' conduct violated various provisions of the FDCPA.

Defendants have denied and continue to deny the material factual allegations and legal

4

claims Plaintiff asserted in the lawsuit and do not believe the claims are meritorious. Among other things, Defendants contend that Plaintiff would not be able to prove any violations of the FDCPA, and that Plaintiff's claims are barred by the statute of limitations.

After nearly two years of litigation that included extensive motion practice and discovery, the parties, well apprised of the strengths and weaknesses of their respective claims, began exploring settlement possibilities on a parallel track. Preliminary Approval Memo, at 3-6. The parties spent a year and a half negotiating and finalizing the Agreement with the assistance of Judge Crane. Crane Decl., ¶2. After the parties agreed on the primary relief for the Settlement Class and Subclass, they engaged in arbitration with Judge Crane to determine the still-remaining disputed issue of the amount of attorneys' fees and costs Defendants would pay, subject to Court approval. This issue was finally resolved on August 28, 2014 (a copy of Judge Crane's Corrected Final Amended Award was submitted to the Court for *in camera* review on September 2, 2014).

## III.    KEY SETTLEMENT TERMS

### A.    The Settlement Class and Settlement Subclass

For settlement purposes only, the Court preliminarily approved a Settlement Class defined in the Agreement, ¶21 as:

> [A]ll persons who have been sued in one or more consumer collection actions commenced in New York State between December 30, 2002 and the present in which C & S represented the state court Plaintiff; and the affidavit of service was signed and/or notarized by Midlantic or any owner, agent or employee of Midlantic.

Preliminary Approval Order, ¶6.

The Court also preliminarily approved, for settlement purposes only, Settlement Subclass defined in the Agreement, ¶22 as:

> [A]ll Settlement Class members who made one or more Involuntary Payments[5]

---

[5] For the purposes of settlement, an "Involuntary Payment" is any payment made by means of any device set forth in

5

>after October 30, 2006 following a judgment taken (on any date before or after October 30, 2006) in a consumer collection action commenced in New York State in which C & S represented the state court Plaintiff; and the affidavit of service was signed and/or notarized by Midlantic or any owner, agent or employee of Midlantic.

*Id*.

Based on the Defendants' review of their computer records before mailing notice, the Defendants identified approximately 51,000 Settlement Class members and approximately 7,600 Subclass members. [Docket No. 79] (Letter from defense counsel setting forth the results of its computer searches); Declaration of Mitchell Selip regarding Defendants' methodologies for identifying Settlement Class and Subclass members, ("Selip Decl."), submitted contemporaneously. As discussed more fully in Plaintiff's Preliminary Approval Memo and briefly below, the Settlement Class and Subclass are appropriately certifiable here for settlement purposes under Fed. R. Civ. P. 23(a) and (b)(3).

    **B.**    **Settlement Benefits**

If the Agreement is finally approved, Defendants will pay $100,000 to establish a Settlement Class Fund (for statutory damages) and $37,500 to establish a Settlement Subclass Fund (for actual damages). Agreement, at ¶¶45-46. The Settlement Class Fund will be divided *pro rata* on a claims-made basis. Agreement, at ¶45.[6] A total of 880 Settlement Class members have submitted valid claims, thus the pro rated share of each claim, assuming the pour over provision regarding the Subclass Fund does not apply, will be approximately $113.00 per

---

Article 52 of New York's Civil Practice Law and Rules ("Money Judgments – Enforcement") including, without limitation, wage garnishment, levy, execution, bank restraint or other process covered by the statute. Agreement, ¶11.

[6] The Agreement provides that if a pro rata distribution would result in a claim payment amount of less than $7.50 per claimant, the entire amount of the Settlement Class Fund will be paid to one or more mutually acceptable providers of free legal services in the Southern District of New York, subject to Court approval. *Id*, at ¶45. However, based on the number of timely valid claims, the *cy pres* provision in the Agreement is inapplicable. Administrator Decl., ¶14.

claimant. Administrator Decl., ¶14.[7] If the Subclass Fund pour over provision is triggered, then the settlement payments to Settlement Class members will be higher.

The $37,500 Settlement Subclass Fund will be divided among members of the Settlement Subclass who submit valid claims by payments of $125 per claimant or the total amount of the involuntary payment (whichever is less). Agreement, ¶46. Based on the number of valid Subclass member claims that have been submitted to date, (272), each claimant will receive a full refund of his or her involuntary payment or $125, whichever is less. Administrator Decl., ¶14 (as of September 13, 2014, a total of 272 Settlement Subclass members have submitted valid claims).

Unclaimed funds arising because a Settlement Class member or a Settlement Subclass member does not cash a check made as a claims payment will be paid to one or more mutually acceptable providers of free legal services in the Southern District of New York and approved by the Court. *Id*., at ¶49. To the extent that the *cy pres* provision becomes applicable, the parties will propose a mutually agreeable legal services organization to the Court and request approval for it to be the *cy pres* recipient.

In addition to the monetary benefits provided in the settlement, the Settlement Class and Settlement Subclass will benefit from Defendants' representations and warranties that they are not currently and will not in the future send collection letters or commence any new post judgment collection actions (e.g., wage garnishment, bank restraint, taking of liens, issuance of post-judgment discovery devices) with regard to judgments involving Midlantic affidavits of

---

[7] The parties are currently assessing the status of a handful of claims and inquiries submitted by class members requesting on various grounds/special circumstances that their late claims be permitted. The parties thus anticipate that there may be slight but not material changes to the number of claimant's and the per-rata share calculation. For this reason, the parties intend to file a revised proposed Final Order shortly before the fairness hearing. A proposed Final Order was previously submitted as part of the parties Joint Motion For Preliminary Approval Of Class Settlement. Docket No. 72.10.

service.  Agreement, at ¶51.  The Parties agree that this representation and warranty will not apply to post-judgment collection efforts that are already in place with regard to a particular account (e.g. already commenced wage garnishment, real property liens that are already in place, etc.).  *Id*.

In addition, the settlement website provides a hyperlink to case-related documents, including, former Midlantic process server Kenneth Vega's sworn affidavit in *Caprino et al. v. Cohen & Slamowitz, et al.* and the deposition testimony of Alfred Smith taken in this case, regarding Midlantic's service of process procedures.  Agreement, at ¶ 52.  The availability of these documents will give class members an opportunity to evaluate whether the state court judgments against them are valid.

### C. Class Notice, Right to Request Exclusion and to Object, and Settlement Administration

In accordance with the Court's Preliminary Approval Order and the Court's Endorsed Letter Order dated June 24, 2014 (Docket No. 79) on July 15, 2014, the Settlement Administrator mailed the Court-approved short form notices to approximately 50,892 class members. Preliminary Approval Order, ¶15-21; Administrator's Decl., ¶¶8-9. Prior to mailing notice and in accordance with the Agreement, Defendants provided the Settlement Administrator with the class list, which the Settlement Administrator processed through the Coding Accuracy Support and the National Change of Address Systems to ensure it had accurate and updated mailing addresses. Agreement, ¶41; Administrator's Decl., ¶4. On July 15, 2014, the Settlement Administrator established a toll-free number that class members could call for information about the settlement, to request a claim form or long form notice, or to update their mailing address. Administrator's Decl., ¶7. The Settlement Administrator also established the Settlement Website, www.cobleclassaction.com, on July 15, 2014, which remains active and contains general

information about the lawsuit, frequently asked questions, settlement updates, and downloadable documents including the Court-approved Long Form Notices and Claim Forms, the Settlement Agreement, Preliminary Order, Vega Affidavit, Smith Deposition and Plaintiff's Fee Application with supporting declaration. *Id.*, ¶6. The Settlement Administrator has remailed all short form notices that were returned to it with updated addresses by the U.S. Postal Service. *Id.*, ¶12.

The Court-approved short and long form Notices clearly and conspicuously explained settlement class members' rights to opt out or object to the settlement. As of the September 13, 2014 deadline for opt outs and objections, the Settlement Administrator and the parties have only received 11 requests for exclusion and there are no objections to the settlement. *Id.*, ¶ 16.

The Defendants also complied with its obligation to serve written notice of the proposed Agreement to the New York Attorney General's office pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 and the Settlement Agreement, by timely mailing such notice.  Docket No. 78 (Certification Pursuant To 28 U.S.C. § 1715). The New York Attorney General did not object to the settlement.

### D. Attorneys' Fees, Costs, and Service Payments

On August 25, 2014, the Plaintiff submitted her Application for Award of Stipulated Attorney's Fees and Costs, ("Fee Application") (Docket No. 81), in accordance with the Court's Preliminary Approval Order. Preliminary Approval Order, ¶31. As detailed in the Fee Application, the parties agreed to submit the question of the amount of attorneys' fees and costs to be paid by Defendant, subject to the Court's approval.  The parties agreed to use Judge Crane as arbitrator, and the parties submissions to Judge Crane, as well as his decision occurred only after the parties had agreed upon the settlement relief for Plaintiff and the class. *Id.*; Fee Application, at 2-4. The parties each submitted multiple briefs to Judge Crane in connection with Plaintiff's Fee Application, and Plaintiff's counsel provided Defendants and Judge Crane with

9

detailed daily time and expense records and supporting declarations to attest to their lodestar and work performed in the case. Fee Application, at 2-4. The arbitration process was thorough and procedurally fair.

Judge Crane ultimately determined that Defendants will pay, subject to the Court's approval, $322,495.27 in attorneys' fees and a total of $44,815.13 in actual costs. Judge Crane's Corrected Amended Final Award ("Final Award"), submitted to the Court *in camera* on September 2, 2014.[8] This amount of attorneys' fees represents only 46% of Plaintiff's counsels' combined lodestar, accrued over three and a half years of hard fought litigation and settlement negotiations.[9] As discussed in detail in Plaintiff's Fee Application, Judge Crane's determination of the amounts of attorneys' fees and costs that Defendant must pay if the Court approves them are fair and reasonable.[10]  Based on the parties' agreement to arbitrate, neither party may object to Judge Crane's determinations.

Plaintiff's Fee Application and supporting declaration were posted on the Settlement Website on August 23, 2014, so settlement class members had full disclosure of the amount of attorneys' fees and costs Plaintiff is requesting the Court to approve. In addition, the amount of attorneys' fees and costs Plaintiff's counsel requested in the arbitration process were contained in the Long Form notices available on the website. The Long Form notices explained that the parties were going to submit the question of the amounts of attorneys' fees and costs that Defendant will pay, subject to Court approval, to neutral party, and disclosed the amounts being

---

[8] Plaintiff submitted Judge Crane's original "Final Award" to the Court *in camera* on August, 22, 2014, after which Plaintiff's counsel applied for an additional cost reimbursement of later-paid JAMS arbitration bills, which Judge Crane awarded, as set forth in the Corrected Final Amended Award, submitted to the Court in camera on September 2, 2014. An udpate to inform class members of these additional costs has been posted on the Settlement Website.
[9] Nor does Judge Crane's award compensate Plaintiff's counsel for the significant additional work necessary to conclude the case, e.g. fielding class member inquiries, preparation of the instant motion, preparation of the previously filed Fee Application, attendance at the Fairness Hearing, etc.
[10] Although they advocate for approval of the fees awarded by Judge Crane because they were awarded by a process binding under the settlement, Plaintiff's counsel do believe that Judge Crane's cuts to their lodestar were excessive and unwarranted.  But for the settlement, they would be applying for a higher fee.

requested.  Notably, no settlement class member objected to these amounts, which were subsequently significantly reduced by Judge Crane.

Defendants have also agreed to pay the Plaintiff a service payment in the amount of $5,000 if approved by the Court.  *Id*., at ¶47.  Importantly, neither the attorneys' fees and costs nor the service payment will diminish the benefits to the Settlement Class or Subclass. No one objected to the amounts of attorneys' fees, costs or service payment Plaintiff is requesting.

### E. Release

In exchange for settlement benefits, Settlement Class members who are not also Settlement Subclass members and who do not opt out will release claims only for statutory (but not actual) damages under the FDCPA and all claims that were raised or could have been raised in the case based on a common nucleus of operative facts other than FDCPA actual damage claims, provided however that: (i) the release shall not include any defense to any of the underlying state court actions and/or judgments; and (ii) the release shall not include waiver or release of any claim any Settlement Class member may have in *Hallmark v. Cohen & Slamowitz, LLP*, No. 11-cv-842S, (W.D.N.Y.).  *See* 2013 WL 5178128 (W.D.N.Y. Sep. 16, 2013). Agreement, at ¶18(a).  Likewise, Defendants agree that any release entered into in *Hallmark* shall not apply to any claims arising in this case.  *Id*.  This release is appropriately limited for Settlement Class members to exclude FDCPA actual damages claims and to allow Settlement Class members to recover, if applicable, in another pending and possibly overlapping class action case.

Settlement Subclass members who do not opt out will be subject to the same release described above contained in Paragraph 18(a) of the Agreement, but will also release actual damage claims under the FDCPA in light of the payments to be made on those claims.  *Id*., at ¶18(b).  The Class Plaintiff will release all of her claims as described in Paragraphs 18(a) and (b)

11

of the Agreement, as well as all other claims she may have against Defendants. *Id*., at ¶18(c).

Importantly, Class members and Settlement Subclass members are not giving up *any* defenses they may have in the state court collection lawsuit in which the Midlantic affidavit was filed. *Id*., at ¶18(a). For example, if a Class member was not properly served with the Summons and Complaint in the state court lawsuit, s/he is not waiving the right to seek to have the judgment vacated or to have the case dismissed based on lack of service.

No Settlement Class or Subclass member objected to the Release.

## IV. CLASS CERTIFICATION FOR SETTLEMENT PURPOSES WAS APPROPRIATELY PRELIMINARY APPROVED. NOTHING HAS CHANGED SINCE THE COURT'S PRELIMINARY APPROVAL ORDER.

For settlement purposes only, the Court preliminarily certified the Settlement Class and Subclass on May 29, 2014. Preliminary Approval Order, ¶¶6-8. In so doing, the Court found that the Settlement Class and Subclass meet the requirements of Fed. R. Civ. P. 23(a) and (b)(3) because: (1) the members of each class (50,892, including 5,989 subclass members) are so numerous that joinder is impracticable; (2) there are questions of law and fact common to each class; (3) the claims of the Class Plaintiff are typical of the claims of Settlement Class and Subclass members; (4) the Class Plaintiff and Class Counsel have fairly and adequately represented the interests of each class and have no interests that are antagonistic to those of the classes; (5) the common questions of law and fact predominate over any individual questions affecting the Settlement Class and Subclass; and (6) a class action the superior method for the fair and efficient resolution of this controversy. *Id*., at ¶8. The Court also appointed Plaintiff Elizabeth Coble as Settlement Class Representative and Plaintiff's counsel, Schlanger & Schlanger, LLP and Klein Kavanagh Costello, LLP as Class Counsel. *Id*., at ¶¶9-10.

Nothing has changed since the Court's Preliminary Approval Order that would affect the

appropriateness of certification for settlement purposes here and no class member has objected to certification. A full discussion of the class certification factors is set forth in Plaintiff's Preliminary Approval Memo, at 13-17.

## V. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED

### A. The Standard for Class Action Settlement Approval

In order to approve a settlement, the district court must conclude that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). After preliminarily approving a class action settlement, a district court considers the following factors before granting final approval:

(1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the class;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial;

(7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9) the range of reasonableness of the settlement fund in light of the best possible recovery.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

### 1. The Complexity, Expense And Likely Duration Of The Litigation

Here, the Defendants have denied liability. While the FDCPA is a strict liability statute, and the Plaintiff believes that the practices complained of are clear violations of the law, a trial would be necessary to resolve the issue. The Defendants have not agreed to class certification

except for purposes of settlement, so motion practice would be necessary on class certification. Defendants have also made clear that, absent settlement, they intended to move for summary judgment on a variety of grounds.

Indeed, even assuming Plaintiff was to prevail on the merits, the Defendants could engage in an appeal, further delaying any relief to Plaintiff or class members for many additional months or years. The Agreement, if approved, will yield a quick and certain benefit to the Settlement Class, and avoid additional prolonged litigation.

### 2. The Reaction Of The Class

The reaction of the class to the settlement has been overwhelmingly positive and strongly favors final approval. Notices sent to Settlement Class and Subclass members included an explanation of how much money they could expect to receive, the amount of the settlement funds and respective class sizes. The Notices informed Settlement Class and Subclass members of their right to file a claim, object or opt out of the settlement and explained how to do so. Only 11 requests for exclusion have been filed. Administrator's Decl, ¶ 16. This small number of opt outs and lack of any objections strongly support a finding that the Agreement is fair, reasonable and adequate. *Clem, et al., v. Keybank, N.A.*, No. 13 Civ. 789, 2014 WL 2895918, at *5 (S.D.N.Y. Jun. 20, 2014) (finding that only 3 objectors and 3 opt outs in a 1,501 settlement class is a favorable response demonstrating that the class approves the settlement, which further supports final approval), *citing*, *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 177 (W.D.N.Y. 2011) (granting final approval and noting "very little negative reaction by class members to the proposed settlement" where 11 out of 3,800 class members opted out, and 3 objected); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where 7 of 2,025 class members objected and 2 requested exclusion); *Bellifemine v.*

*Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207, 2010 WL 3119374, at *3 (S.D.N.Y. Aug. 6, 2010) (granting final approval where there were no objections and only 28 of 5,262 opted out, noting that "[a] small number of objections is convincing evidence of strong support by class members"); *Wright v. Stern,* 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) (approving settlement where 13 of 3,500 class members objected and 3 opted out, noting that "[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

### 3. The Stage Of The Proceedings And The Amount Of Discovery Completed

The Parties were fully apprised of the strengths and weaknesses of their respective claims and defenses at the time they decided to explore settlement. As discussed in detail in Plaintiff's Preliminary Approval Memo, at 3-5, the Parties litigated this case for nearly two years before discussing settlement. That litigation included, among other things, motion practice on Defendants' motion to dismiss, numerous discovery disputes, Plaintiffs' motion to amend her original complaint and briefing on the applicability of the *Rooker-Feldman* doctrine. The Parties had also obtained substantial discovery at the time they began discussing settlement, and continued the discovery process until they were ultimately able to come to the principal terms of the Agreement. In addition to formal discovery, including seven party depositions, as well as five third-party depositions and voluminous document productions, Plaintiff's counsel and Defendants' counsel have engaged in confirmatory discovery for the purpose of verifying Defendants' net worth and identifying Settlement Class members.

The Agreement is the result of exhaustive negotiations between the parties over the course of nearly two years. *See*, Crane Decl., ¶3-6 ("[t]he parties reached an Agreement In Principle ('AIP') at the second mediation session…they spent the next few month finalizing the details of the AIP, with my assistance…I also had many telephone conferences with the parties

over a period of four months following the execution of the AIP to assist them in resolving numerous additional issues that subsequently arose. The settlement terms reflect considerable diligence, creativity, and flexibility on the part of all counsel.")

The negotiations here were hard fought and undeniably conducted at arms length, which strongly supports the fairness and reasonableness of the settlement. *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623 (PAC), 04 Civ. 4488 (PAC), 06 Civ. 5672 (PAC), 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010) (finding that, "a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery."); *In re Giant Interactive Grp ., Inc. Sec. Litig.,* No. 07 Civ. 10588, 2011 WL 5244707, at *4 (S.D.N.Y. Nov. 2, 2011) (parties were entitled to a presumption of fairness where mediator facilitated arms length negotiations). The involvement of an experienced mediator confirms the arms length nature of the process. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400, 2010 WL 4537550, at *14 (S.D.N.Y. Nov. 8, 2010) (experience and skill of mediator contribute to presumption of fairness).

### 4. The Risks Of Establishing Liability and Damages and Maintaining The Class Action Through Trial

Among other defenses, Defendants maintain that they will be able to prove at trial that they did not actively conceal their allegedly wrongful conduct such that Plaintiff's theory of equitable tolling (extending the otherwise short FDCPA one year statute of limitations) will fail. While Plaintiff is confident in her equitable tolling theory based on the facts of the case, most, if not all, of the Settlement Class would be barred from recovering anything if Plaintiff was unable to make a showing that Defendants actively concealed their wrongful conduct such that the Court should equitably toll their claims. This alone presents a significant litigation risk to Plaintiff and the putative class.

In addition, the Plaintiff had not yet moved for class certification at the time of settlement. Therefore, settlement of this litigation removes any risk that class certification would be denied or that, if granted, such decision could be appealed.  If the litigation were to continue it would be many months before the parties would fully develop the evidence in support (and opposition) of class certification, engage in the necessary motion practice, and have oral argument on class certification. If the Plaintiff prevailed at class certification, Defendants may have a right to appeal the Court's decision. Litigating an appeal of the Court's decision could take months or perhaps years. In the meantime, class members would have no notice of this lawsuit and risk receiving no compensation.

### 5. The Ability Of The Defendant To Withstand A Greater Judgment; The Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery, And The Range Of Reasonableness Of The Settlement Fund In Light Of All The Attendant Risks Of Litigation

Recovery of statutory damages in FDCPA class actions is limited to the lesser of $500,000 or one percent of the net worth of the defendant debt collector for the remainder of the class.  *See* 15 U.S.C. §§ 1692k(a)(1), (a)(2)(B).  The proposed settlement signifies a significant accomplishment inasmuch as the Settlement Class Fund of $100,000, in the context of litigation against a law firm and in light of confirmatory discovery, constitutes most and perhaps all of what could have been won at trial given the FDCPA's cap on statutory damages.

In addition, by securing a $37,500 pool for actual damages under the FDCPA, those who made involuntary payments based on the judgment against them (*i.e.*, those who have suffered the greatest financial harm in light of the alleged legal violations) will have additional recourse. The settlement's provision for an actual damages subclass and a $37,500 subclass fund is particularly notable given the fact that Plaintiff's attempt to amend the complaint to include such

a subclass and to claim for actual damages on this basis was denied by Magistrate Yanthis. *See,* Docket No. 48. While Plaintiff believes that her motion to set aside Magistrate Yanthis' ruling on this issue was meritorious, positive outcomes on such motions are highly uncertain.

Finally, this settlement provides significant non-monetary benefits in the form of protection from certain further collection activities related to the state court judgments and in providing notice to class members that may allow them to evaluate their options with respect to the state court judgments. While these benefits are difficult to quantify, they contribute to the conclusion that the settlement has significant and material benefits to the class commensurate with the value of the claims at issue.

*[rest of page intentionally left blank]*

## VII. CONCLUSION

For the reasons set forth above, the Parties' Joint Motion for Final Approval of Class Settlement should be granted so that Settlement Class and Subclass members who filed claims may receive their settlement benefits.

September 24, 2014

                                      Respectfully Submitted,

                                      */s/ Shennan Kavanagh*
                                      Gary Klein (admitted *pro hac vice*)
                                      Shennan Kavanagh (admitted *pro hac vice*)
                                      Klein Kavanagh Costello, LLP
                                      85 Merrimac Street, 4th Floor
                                      Boston, Massachusetts 02114
                                      Phone: 617-357-5500
                                      Fax: 617-357-5030
                                      klein@kkcllp.com
                                      kavanagh@kkcllp.com

                                      /s/ *Daniel A. Schlanger*
                                      Daniel A. Schlanger, Esq.
                                      Schlanger & Schlanger, LLP
                                      9 East 40th Street, Suite 1300
                                      New York, NY 10016
                                      Ph:  914-946-1981
                                      Fax:  914-946-2930
                                      daniel@schlangerlegal.com

                                      *Class Counsel*